UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MICHELLE L. ROSE, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 5: 10-365-DCR |
| V. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Michelle L. Rose ("Rose" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [Record Nos. 9 and 10] Rose argues that the administrative law judge's opinion is not supported by substantial evidence. Thus, she seeks an award of benefits or, in the alternative, an order remanding the matter for a new hearing and decision. However, the Commissioner contends that the decision is supported by substantial evidence, was decided by proper legal standards, and should be affirmed. For the reasons discussed below, the Court believes that remand for further proceedings is necessary. Therefore, the Court will grant partial relief to Rose and deny the Commissioner's motion.

**I.**

On December 8, 2006, Rose applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. She alleged that she became disabled on

January 3, 2005. [Tr., pp. 81, 107-09] Her application was denied initially and upon reconsideration. [Tr., pp. 81-84, 90-91] Rose, along with her attorney Rodney Davis and vocational expert Martha Goss, appeared before Administrative Law Judge ("ALJ") Don C. Paris on August 12, 2008, in Lexington, Kentucky. [Tr., p. 19] In a hearing decision dated January 26, 2009, ALJ Paris found that Rose was not disabled under sections 216(i) and 223(d) of the Social Security Act and thus was not entitled to a period of disability or disability insurance benefits. [Tr., p. 18]

Rose was thirty-eight years old at the time of the administrative hearing. She has a high school education and prior work experience as an administrative assistant and file clerk. [Tr., pp. 18, 55, 135, 140, 145] Her alleged disability stems from rheumatoid arthritis, systemic lupus, and Raynaud's syndrome. [Tr., p. 139] After reviewing the record and the testimony presented during the hearing, the ALJ concluded that Rose suffered from the severe impairments of fibromyalgia, pseudo-seizures, rheumatoid arthritis, major depressive disorder, and post-traumatic stress disorder. [Tr., p. 11] Notwithstanding these impairments, he found that Rose did not have any impairment or combination of impairments that met any of the listed impairments in 20 C.F.R. § 404.1525-.1526. [Tr., pp. 12-14] The ALJ further concluded that Rose retained the residual functional capacity ("RFC") to perform light exertional work . . . [requiring] a sit/stand option with no prolonged standing/walking in excess of 30 minutes without interruption." [Tr., p. 14] The ALJ also determined that she should "avoid concentrated exposure to extreme cold, full body vibration and direct sun light . . . [and] avoid hazards such

as unprotected heights and dangerous machinery." [Tr., p. 14] With regard to her mental impairments, the ALJ found that Rose:

> retains the mental capacity to understand, remember and carry out simple work instructions; sustain concentration and persistence to perform such task[s] in 2 hour segments in an 8 hour day; adequately relate to co-workers and supervisors in an object focused setting where contact is casual and infrequent, within a work environment that has limited contact with the general public; and she would be able to adapt to routine changes in a routine work environment.

[Tr., p. 14] As a result of this assessment and determination, Rose was denied a period of disability and disability insurance benefits. [Tr., p. 18]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets

or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether she can do past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Rose asserts that ALJ Paris erred in evaluating the evidence of her physical impairments. She further contends that the ALJ gave insufficient weight to medical records from her primary treating physicians. Regarding her psychiatric impairments, Rose argues that the ALJ failed to properly evaluate and weigh her psychological examination. Each of these arguments will be addressed in turn.

**A.    Physical Impairments**

Rose challenges the ALJ's decision as unsupported by substantial evidence. She asserts that the ALJ failed to properly consider the reports from her primary physicians – Dr. Goldfarb and Dr. Palley – or to assign those reports the appropriate weight. Specifically, she argues that the ALJ failed to "set forth sufficient reasons for rejecting the [physicians'] opinions." [Record No. 9, p. 5]

Generally, more weight is given to treating sources' opinions, because a treating source is likely to be most able to provide "a detailed, longitudinal picture of [the claimant's] medical

impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion "as to the nature and severity of a claimant's conditions" will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (internal quotation marks omitted) (alteration in original).

However, even if the treating source's opinion is not entitled to controlling weight, that does not necessarily mean that the opinion should be completely rejected. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372 (6th Cir. 2006) (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). Rather, the ALJ must determine what weight to give the opinion by considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6).

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must give "good reasons" for his decision. *Rogers*, 486 F.3d at 242. This is a "clear elaboration requirement imposed explicitly by the regulations." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008). As Social Security Ruling 96-2p explains:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence

>in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The dual purpose of this requirement is to help claimants understand the disposition of their cases and "ensure that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544-45 (citations omitted). Failure to abide by this requirement can result in the matter being remanded. *Id.* at 545; *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

       1.    **Dr. Goldfarb**

Rose first alleges error in the ALJ's assessment of the medical records and opinions from her primary physician, Dr. Goldfarb. She takes exception to the ALJ's characterization of Dr. Goldfarb's first assessment, dated February 7, 2005 [Tr., p. 728], as having been "done merely as an accommodation to the claimant so that she could obtain long term benefits from her private insurance company." [Tr., p. 16] She also disagrees with the ALJ's conclusion that the first assessment was "mostly inconsistent with Dr. Goldfarb's treatment notes and with the record as a whole." [Tr., p. 16] Rose asserts that "there are voluminous records and tests that support" the position expressed in Dr. Goldfarb's first assessment. [Record No. 9, p. 8] She argues that

the ALJ's decision to give Dr. Goldfarb's office notes, dated January 4, 2008 [Tr., pp. 750-51], the most probative weight was erroneous. Moreover, she claims, the ALJ failed to adequately consider Dr. Goldfarb's other medical records in making his determination.

The ALJ did not err in deciding to give less weight to Dr. Goldfarb's "first assessment." Although Dr. Goldfarb was a treating physician and a specialist, the ALJ's decision to afford less weight to his February 7, 2005, assessment is supported by substantial evidence. First, ALJ Paris stated in detail his reasoning for rejecting this opinion. Second, the assessment was inconsistent with the record as a whole. None of Dr. Goldfarb's other opinions or treatment notes imposes the extensive restrictions and limitations indicated in this assessment. Finally, the assessment was completed only one month after Dr. Goldfarb began treating Rose and, therefore, is not entitled to significant weight. *See* 20 C.F.R. § 404.1527(d)(2)(i)-(ii).

ALJ Paris gave Dr. Goldfarb's "second assessment" (*i.e.*, the January 4, 2008 office note) the most probative weight in his decision that Rose is not disabled. Rose challenges this conclusion partly on the basis that this record is not an actual assessment, but an office note. However, the Commissioner points out that this is a report that is "properly before the ALJ for consideration" as part of the record. [Record No. 10, p. 7]

It is problematic, however, that ALJ Paris specifically mentions that he considered "*both assessments* made by Dr. Goldfarb," when there are more than two assessments in the record. [Tr., p. 16 (emphasis added)] In fact, there are at least nineteen. [Tr., pp. 573, 575, 576, 578, 581, 583, 585, 587, 589, 591, 592-95, 613, 614, 728, 730-33, 750, 753, 755, 757] Even if not counting the office notes, there are three official assessments from Dr. Goldfarb in the record,

-8-

only one of which was addressed by ALJ Paris. An ALJ may "use judgment based on the facts of each case in determining whether, and the extent to which, it is necessary to address separately each medical opinion from a single source." SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996). However, an ALJ must still review all of the relevant evidence. *See, e.g.*, 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996) (noting that the RFC assessment is "based upon consideration of all relevant evidence in the case record"). Therefore, although he had no obligation to discuss each note and opinion submitted by Dr. Goldfarb, the ALJ did have an obligation to review all of them prior to rendering his decision. By stating that he considered "both assessments," ALJ Paris indicated that he failed to review the rest of Dr. Goldfarb's medical opinions. Because it appears that the ALJ did not consider all the relevant evidence, the Court cannot conclude that his decision was supported by substantial evidence. *See Cole v. Astrue*, No. 09-4309, 2011 WL 2745792, at *3 (6th Cir. July 15, 2011) ("An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'"). Therefore, the case will be remanded for consideration of the entirety of Dr. Goldfarb's medical opinions.

    **2. Dr. Palley**

Next, Rose argues that the ALJ erred when he rejected the opinions of the other treating physician, Dr. Palley. ALJ Paris rejected Dr. Palley's opinions because they were "based completely on the claimant's subjective complaints" and were "inconsistent with the . . . objective medical evidence of record," specifically the examination of consultative physician Dr.

Hoskins. [Tr., p. 16] However, Rose asserts that Dr. Palley's assessments were thorough and supported by substantial medical evidence. She further argues that Dr. Palley's conclusions were not inconsistent with Dr. Hoskins' evaluation [Tr., p. 339], as the ALJ concluded.

ALJ Paris provided good reasons for not giving Dr. Palley's opinions controlling weight. ALJ Paris noted that Dr. Palley practices family medicine and that her assessment is "outside the area of her expertise." [Tr., p. 17] As a result, her opinions are afforded less weight than Dr. Goldfarb's, even though she is also a treating physician. *See* 20 C.F.R. § 404.1527(d)(2), (d)(5). The ALJ stated that he discounted the assessments submitted by Dr. Palley because her opinions were not supported by objective medical findings, they were contradicted by other physicians, and some of her conclusions were not supported by her own treatment notes. The Commissioner correctly points out that the objective findings from Dr. Palley's treatment notes do not justify the limitations she assigned to Rose in her assessments. Her findings regarding Rose's musculoskeletal system generally indicate a steady gait and full range of motion, and only twice does she find a reduced grip, arm, and leg strength. [Tr., pp. 505, 741] These findings are out of proportion to the proposed limitations in her assessments: for instance, only occasional lifting of no more than ten pounds and no more than one hour of intermittent sitting and walking per workday. [Tr., p. 727] Additionally, ALJ Paris was correct in finding that Dr. Palley's opinions were inconsistent with the consultative examination conducted by Dr. Hoskins, in which he found no musculoskeletal abnormalities.[1] [Tr., pp. 337-41] In summary, ALJ Paris's conclusion

---

[1] Rose argues that Dr. Hoskins' conclusion that it "seems reasonable that musculoskeletal abnormalities might substantially limit" certain work activities shows that his assessment actually supports Dr. Palley's opinions. [Tr., p. 339] However, as the Commissioner points out, this is an equivocal statement. Furthermore, Dr. Hoskins refrained from actually prescribing specific limitations. As a result, the two

regarding the weight to be given Dr. Palley's opinions was supported by substantial evidence, and he gave "good reasons" for this conclusion in his decision.

### B.     Psychiatric Impairments

Rose also alleges error in the ALJ's assessment of the opinion of consultative examiner Jennifer Wilke-Deaton.  She maintains that Ms. Wilke-Deaton's findings were supported by substantial evidence and psychological testing.  She further argues that the ALJ's two stated reasons for rejecting Ms. Wilke-Deaton's assessment — that the assessment was inconsistent with the other medical records and that Rose "was able to handle the pressure of appearing at the hearing" — are, respectively, incorrect and erroneous as a matter of law.  Rose asserts that there are several "other references to limitations from depression or anxiety" in the record.  [Record No. 9, p. 13] Regarding her appearance at the hearing, Rose maintains that the ALJ's "personal observations of the Claimant without reference to some medical evidence are irrelevant to a proper administrative determination of the Claimant's medical impairments." [*Id.*, p. 14] The Commissioner points out that Ms. Wilke-Deaton was a one-time consultative examiner whose opinion is not entitled to any special weight or consideration.  20 C.F.R. §§ 404.1502, 404.1527(d)(2).

Ms. Wilke-Deaton examined Rose on June 27, 2008.  [Tr., pp. 705-15]  She found that Rose's ability to understand, remember, and follow instructions was markedly impaired, as was her attention span and her ability to adapt or respond to pressure.  [Tr., p. 714]  However, ALJ Paris found the assessment "to be inconsistent with the claimant's abilities as there is no

---

physicians' opinions are not consistent.

evidence in the record where any other physician has noted the claimant has had difficulties responding appropriately." [Tr., p. 17] Rose counters that several of the physicians' reports and evaluations contain "references to limitations from depression or anxiety." [Record No. 9, p. 13] Therefore, she claims, Ms. Wilke-Deaton's opinion is not inconsistent with the record. However, mere mentions of problems related to depression and anxiety are not enough to make the findings consistent. None of the other medical sources indicated that Rose's psychological impairments were nearly as limiting as was suggested by Ms. Wilke-Deaton. [*See, e.g.*, Tr., p. 624 (noting "a significant degree of depression, somatization, and anxiety that could easily account for her cognitive concerns; therefore, she may benefit from treatment of her depression and anxiety")] Moreover, Rose's own testimony established that she regularly engages in activities that, as the Commissioner notes, "demonstrate less limitation[] on social functioning and concentration than Ms. Wilke-Deaton attributed" to her. [Record No. 10, p. 13]

ALJ Paris also chose to give limited weight to Ms. Wilke-Deaton's psychological evaluation because he found that Rose "was able to handle the pressure of appearing at the hearing as well as being able to respond appropriately." [Tr., p. 17] His conclusions about Rose's demeanor at the hearing were not unreasonable or outside the scope of his authority. The ALJ is in a unique position to observe the claimant and, therefore, he may use those observations as evidence to support his findings. In fact, an ALJ is "charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). As a result, an ALJ's credibility determinations are "entitled to deference on judicial review." *Boyett v. Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001). Additionally, because ALJ Paris'

decision to afford less weight to Ms. Wilke-Deaton's opinion was supported by more evidence than merely his own observations of her behavior at the hearing, his conclusion is not erroneous. Therefore, the ALJ's decision to discount Ms. Wilke-Deaton's opinion was supported by substantial evidence.

### IV.

The ALJ did not err in discounting Dr. Palley's opinion or Ms. Wilke-Deaton's opinion. However, because his written decision indicated that he failed to properly evaluate all of the records submitted by Dr. Goldfarb, this Court cannot determine at this time whether substantial evidence supports ALJ Paris's determination that Rose is not disabled. Accordingly, it is hereby

**ORDERED** as follows:

(1)  Plaintiff Michelle L. Rose's Motion for Summary Judgment [Record No. 9] is **GRANTED**, in part, to the extent that she seeks a remand for further administrative proceedings;

(2)  Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 10] is **DENIED**; and

(3)  The decision of Administrative Law Judge Don C. Paris is **REVERSED** and this matter is **REMANDED** for further administrative proceedings consistent with this opinion.

This 16th day of September, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge